**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-02533-RM

REBECCA MARCHAND,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

___

**ORDER**
___

    This matter is before the Court on Plaintiff Rebecca Marchand's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB.

    Defendant provided the Court with the administrative record. (ECF Nos. 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 13; 16; 17.)

    For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's DIB application.

## I. BACKGROUND

Plaintiff applied for DIB in September 2011, alleging she was disabled as of July 7, 2011, due to the following conditions that limit her ability to work: diabetes, back problems, thyroid, and arthritis. (Admin. R. ("Tr.") 149-50, 182.) After Plaintiff's application was initially denied (Tr. 80-82), Plaintiff requested a hearing before an ALJ. (Tr. 83.) The ALJ denied Plaintiff's application. (Tr. 11-31.) Plaintiff requested review of the ALJ's decision (Tr. 10) and, in July 2014, the Appeals Council denied such review. (Tr. 1-6.) Plaintiff timely requested judicial review before the Court.

### A. Background and Relevant Medical Evidence

Plaintiff was born in 1965. (Tr. 37.) Plaintiff attended tenth grade. (Tr. 39.) Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes: fast-food worker, kitchen hand, order picker, forklift operator, bagger, retail clerk, and waitress. (Tr. 60-61.)

Plaintiff claims she became disabled as of July 7, 2011 due to a combination of physical[1] and mental health impairments. (Tr. 44-45.)

In 2003, Plaintiff was in a motor vehicle accident from which she sustained fractures to her pelvis, tibia, and fibia as well as a traumatic brain injury. (Tr. 249-60.)

In 2009, Eric Britton, M.D., examined Plaintiff. (Tr. 273-74.) In 2010, based on his examination, Dr. Britton diagnosed Plaintiff with bilateral carpal tunnel syndrome and synovitis. (Tr. 275.) In 2010, Plaintiff had surgery on both of her hands for carpal tunnel syndrome and tenosynovitis. (Tr. 277-79, 281-82.)

Also in 2010, Plaintiff was diagnosed with diabetes and depression. (Tr. 285-88.)

---

[1] Plaintiff's opening brief (ECF No. 13) focuses only on Plaintiff's upper extremity impairments, therefore the Court will not discuss Plaintiff's other impairments unless they provide context for her upper extremity impairments.

In 2011, Plaintiff was treated for mental status change, severe pneumonia, and acidosis. (Tr. 311-14.) She was diagnosed with pneumonia with severe sepsis, respiratory failure, acute renal insufficiency and acute metabolic encephalopathy. (Tr. 314.) She was also diagnosed with diabetic ketoacidosis. (Tr. 314.)

In November 2011, Claudia Elsner, M.D., performed a consultative examination in conjunction with Plaintiff's DIB application. (Tr. 315-18.) Dr. Elsner opined that Plaintiff "needs to be careful with overhead work." (Tr. 318.) Dr. Elsner further opined that Plaintiff "most likely had repetitive motion injury . . . [and that] [s]he needs to avoid repetitive motion with hands/wrists and fingers." (Tr. 318.) Dr. Elsner examined Plaintiff and found Plaintiff to have a "[n]ormal range of motion of wrists, elbows, and fingers." (Tr. 317.) Further, Dr. Elsner found Plaintiff to have "normal fine motor skills." (Tr. 317.)

Stanley Cook, a single decision maker[2] ("SDM"), found, based on the medical evidence of record, that Plaintiff had a limited ability to reach overhead and a limited ability to engage in gross handling. (Tr. 74.) In April 2012, after reviewing medical records, state agency physician Charles K. Lee, M.D., affirmed Cook's residual functional capacity evaluation. (Tr. 248.)

In February 2012, Roberta Springs, M.D., examined Plaintiff and completed a functional limitations assessment on Plaintiff. (Tr. 326-28.) Dr. Springs opined that was limited to sedentary work and could occasionally (1-33% of an eight hour work day), grasp with both hands and perform fine finger manipulations. (Tr. 327-28.)

At the hearing, Plaintiff testified that she could not work for several reasons related to her hands, legs, hips, and mental issues. (Tr. 44-59.) Mentally, Plaintiff reported she was easily overwhelmed, would often forget things, and would panic when under stress. (Tr. 44-45.)

---

[2] As a SDM's opinion does not represent first-hand, direct observations of a lay witness, it does not constitute evidence. *Cunningham v. Astrue*, Case No. 09-2535-SAC, 2010 WL 4737795, at *4 (D. Kan. Nov. 16, 2010); *Klobas v. Astrue*, Case No. 08-CV-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010).

Physically, Plaintiff reported that she could not lift her hands over her head. (Tr. 45.) Also physically, Plaintiff reported that with regard to her hands, that they had hurt for years and that she believed she had arthritis (including in her fingers). (Tr. 45.)

  **B.**  **The ALJ's Decision**

On March 13, 2013, ALJ Patricia E. Hartman issued her decision in this matter denying Plaintiff DIB. (Tr. 11-31.) In reaching her decision, ALJ Hartman followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 16-31.) ALJ Hartman found that Plaintiff had met the disability insured status of the Act through March 31, 2014 and had not engaged in substantial gainful activity since July 7, 2011, the alleged onset date. (Tr. 16.) ALJ Hartman found that Plaintiff has the following severe impairments: "diabetes mellitus; hypothyroidism; depressive disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD); and polysubstance dependence in remission (20 CFR 404.1520(c))." (Tr. 16.) ALJ Hartman found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listings 9.08, 9.04, 12.04, 12.06, 12.09. (Tr. 16-18.) ALJ Hartman found Plaintiff's residual functional capacity ("RFC") to be as follows:

> to perform light work as defined in 20 CFR 404.1567(b) as she can lift/carry 20 pounds occasionally and 10 pounds frequently, sit about 6 hours in an 8-hour workday, and stand and/or walk about 6 hours in an 8-hour workday. The claimant can occasionally operate foot and hand controls. She cannot reach overhead, but can frequently reach in all other directions, as well as handle, finger and feel. The claimant cannot climb ladders and scaffolds, but can occasionally stoop, kneel, crouch, and crawl. She cannot work at unprotected heights, with moving mechanical parts, or use vibrating tools. She is limited to simple, routine and repetitive tasks with a maximum SVP 2 and can tolerate only occasional interaction with supervisors, co-workers, and the public.

(Tr. 18-24.) ALJ Hartman found that Plaintiff has past relevant work and that she is unable to perform such work. (Tr. 24-25.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Hartman's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Hartman found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, as identified in the Dictionary of Occupational Titles, including: router/office clerk; document preparer; and cutter-paster. (Tr. 25-26.)

Therefore, ALJ Hartman concluded that Plaintiff was not disabled. (Tr. 26.)

## C. Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 10.) On July 22, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARDS[3]

### A. Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d

---

[3] C.F.R. citations are to part 404—which addresses DIB claims.

1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i) and 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines an individual as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at § 404.1520(c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step. *Id*. at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

**III.   ANALYSIS**

Plaintiff raises numerous issues for the Court's consideration, including: (1) that the ALJ erred in her assessment of the medical opinion evidence, specifically the opinions of Doctors Elsner, Springs, and Lee (ECF No. 13 at 11-13); (2) that the ALJ's RFC determination lacks substantial evidence as a result of the errors in assessing the medical opinion evidence (ECF No. 13 at 13-14); (3) the ALJ's assessment of Plaintiff's credibility is not based on substantial evidence (ECF No. 13 at 14-16); and (4) the Appeals Council erred in its failure to consider certain evidence submitted to it (ECF No. 13 at 17-19).

Because the Court finds no harmful legal error in the ALJ's analysis and her findings are supported by substantial evidence, the Court affirms Defendant's decision.

**A.   The ALJ Did Not Commit Harmful Legal Err in Her Assessment of the Medical Opinions**

The ALJ is required to weigh every relevant medical opinion he or she receives. *See* 20 C.F.R. §§ 404.1527(c)-(d); *Watkins*, 350 F.3d at 1301 (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why a medical opinion was not adopted). "It is the ALJ's duty to give consideration to all the medical opinions in the record." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)); *see also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009) (unpublished) (holding that "an ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it"); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). The ALJ "must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii)). "[W]hen deciding what weight to assign to an opinion, an ALJ must

consider the factors set forth at 20 C.F.R. []§ 404.1527(d). . . ." *Lauxman*, 321 F. App'x at 769; *see also Wade v. Astrue*, 268 F. App'x. 704, 706 (10th Cir. Jan. 23, 2008) (unpublished). "The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Medical opinions are defined as "'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (citing 20 C.F.R. § 404.1527(a)(2)). Medical opinions may not be ignored and all medical opinions must be evaluated by an ALJ in accordance with factors contained in the regulations. *Id*. (citing 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2-3 (July 2, 1996)). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. §§ 404.1527(d)(2-6). As to non-treating physicians, the ALJ is still required to consider their opinions and to provide specific, legitimate reasons for rejecting them. *Doyal*, 331 F.3d at 764; SSR 96-5p, 1996 WL 374183, at *1. Although the ALJ need not discuss each factor, *see*

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), he "must be 'sufficiently specific' to permit meaningful" review. *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014) (unpublished) (citation omitted). An ALJ may not reject certain medical opinions on the presumption that those providers were paid for the report or obtained at the request of a claimant's attorney. *See Crowder v. Colvin*, 561 F. App'x, 740, 743 (10th Cir. 2014) (unpublished) (citation omitted).

1. The ALJ Properly Assessed Dr. Elsner's Opinion

With respect to Dr. Elsner's opinion, Plaintiff argues the ALJ was "factually incorrect" and impermissibly "substitut[ed] her own lay opinion for that of a medical professional." (ECF No. 13 at 12-13.)

With respect to Plaintiff's first line of attack against the ALJ's assessment of Dr. Elsner's opinion, such argument must fail as it would require the Court to impermissibly reweigh the medical evidence. *See Flaherty*, 515 F.3d at 1070; *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (holding that an ALJ can discount a medical opinion which is inconsistent with other medical evidence).

With respect to Plaintiff's second line of attack against the ALJ's assessment of Dr. Elsner's opinion, such argument must fail as there is no requirement that an ALJ's RFC determination directly correspond with that of a medical opinion on the functional capacity in question. 20 C.F.R. §§ 404.1545, 404.1564; *see Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); SSR 96-8p, 1996 WL 374184, at *2.

The ALJ discussed how Dr. Elsner found that Plaintiff had intact fine motor skills, normal range of motion of wrists, elbows, and fingers, as well as normal strength in her upper extremities. (*See* Tr. 22, 317.) The ALJ's discounting Dr. Elsner's opinion as a result of a

discrepancy between the functional assessment and a contemporaneous examination is legitimate. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002).

Thus, the ALJ properly discussed and weighed Dr. Elsner's opinion.

### 2. The ALJ Properly Assessed Dr. Springs's Opinion

With respect to Dr. Springs's opinion, Plaintiff argues that "the ALJ did not mention the upper extremity restrictions given in that opinion or indicate why she was rejecting those; she merely rejected the limitation to 'sedentary' work." (ECF No. 13 at 13.) Plaintiff argues that the ALJ failed to discuss significantly probative evidence in the file. (ECF No. 13 at 13.) The Court finds no merit to Plaintiff's argument.

Specifically, Dr. Springs's opinion limited Plaintiff to sedentary work which the form defined as

> [e]xerts up to 10 lbs. of force occasionally [1-33% of 8 hr. work day] and/or a negligible amount of force frequently or constantly to lift, carry, push, pull, or otherwise move objects, including the human body. Involves sitting most of the time, but may involve walking or standing for brief periods of time.

(Tr. 328.) The ALJ noted this limitation. (Tr. 22-23.) Further, the ALJ noted Dr. Springs's opinion that Plaintiff can occasionally perform fine finger manipulations. (Tr. 22.) That is the ALJ discussed the probative evidence in the file and considered it (Tr. 18, 22). *See Wall*, 561 F.3d at 1070 (holding that when "the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word") (brackets and internal quotation marks omitted).

The ALJ accorded Dr. Springs's opinion, in part, "less than full weight" because "the actual clinical examination and objective exam findings or any other supporting objective evidence are not in the record from this source." (Tr. 22.) This was proper. *See* 20 C.F.R. § 404.1527(c)(3).

Thus, the ALJ properly discussed and weighed Dr. Springs's opinion.

11

### 3. The ALJ Did Not Commit Harmful Legal Error with Respect to Dr. Lee's Opinion

The ALJ did not discuss Dr. Lee's opinion (Tr. 248). (*See generally* Tr. 14-26.) The ALJ's failure to discuss and weigh Dr. Lee's opinion constitutes legal error. *See Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. § 404.1527(c)). The question, however, is whether the ALJ's failure to discuss and weigh Dr. Lee's opinion constitutes harmful legal error such that the Court must vacate the ALJ's decision.

Harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). This analysis is applied cautiously in the administrative context. *Id*. at 733. Where the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166. In this matter, Defendant advocates that the Court apply harmless error analysis. (ECF No. 16 at 16-17.) The Court finds the harmless error analysis applicable in this matter.

> The Tenth Circuit has previously held that
>
> if the ALJ's RFC is 'generally consistent' with the findings in a medical opinion, or if the RFC is "more favorable" to the claimant than the opinion's findings, then there is no reason to believe that a further analysis or weight of the opinion could advance the claimant's claim of disability. In such a case, the error is harmless because the claimant cannot show prejudice stemming from the ALJ's failure to give greater weight to the opinion.

*Thompson v. Colvin*, 551 F. App'x 944, 948 (10th Cir. 2014) (unpublished) (internal alterations omitted and citation omitted). In this matter, the ALJ's RFC determination (Tr. 18) is "generally consistent" with the findings in Dr. Lee's medical opinion (Tr. 74, 248).

Specifically, the ALJ's RFC determination (Tr. 18) is consistent with Dr. Lee's opinion (which is consistent with that of SDM Cook) that Plaintiff has *limitations* in her ability to reach overhead and handling (gross manipulation) (Tr. 74, 248). Dr. Lee, in relevant part, opined "[t]he additional evidence does not alter the prior RFC dated 11/29/11 by SDM who states the claimant is capable of light work activity." (Tr. 248.) SDM Cook opined, in relevant part, that Plaintiff has manipulative limitations. (Tr. 74.) Specifically, SDM Cook opined that Plaintiff is "[l]imited" in reaching overhead (Tr. 74) and "[l]imited" in handling with respect to gross manipulation. (Tr. 74.) The ALJ determined Plaintiff's RFC, in pertinent part, is that "[s]he cannot reach overhead" and she can "frequently . . . handle." (Tr. 18.) Plaintiff does not show how "limited" is inconsistent with the ALJ's RFC. (*See generally* ECF Nos. 13; 17.)

Plaintiff does not advocate that the ALJ failed to develop the record fully. (*See generally* ECF No. 13.) Specifically, Plaintiff does not argue that SDM Cook's opinion (and that of Dr. Lee) that Plaintiff's restriction to "limited" overhead reaching and gross handling manipulation requires further elucidation, *i.e.*, how is Plaintiff "limited." That is, as the Court has previously explained, the Court reads the ALJ's RFC determination that Plaintiff "cannot reach overhead" and is limited to "frequent[] . . . handl[ing]" is consistent with SDM Cook's opinion (and that of Dr. Lee) that Plaintiff is "limited" in such respects. Because Plaintiff does not make the argument that the ALJ failed to develop the record fully, the Court does not make it for her, and Plaintiff has thus waived the argument. *See Wall*, 561 F.3d at 1066-67.

Further, the Court agrees with Defendant's argument (ECF No. 16 at 16-17) that Dr. Lee's opinion (Tr. 248) regarding Plaintiff's upper body limitations is similar to that of Dr. Elsner's opinion (Tr. 318). Specifically, Dr. Elsner opined, in relevant part, that Plaintiff "needs to be careful with overhead work" and "needs to avoid *repetitive* motion with hands/wrists and

13

fingers." (Tr. 318 (emphasis added).)  The ALJ, as discussed previously, *supra* III.A.1, properly discounted Dr. Elsner's opinion.  Thus, the error in failing to discuss and weigh a non-examining physician's opinion (Dr. Lee's opinion) is harmless based on its similarity to an examining physician's opinion (Dr. Elsner's opinion).  *See Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014) (unpublished).  Furthermore, Plaintiff does not show how Dr. Elsner's opinion (Tr. 318) is inconsistent with that of the ALJ's RFC (Tr. 18).  The proscription against "*repetitive* motion with hands/wrists and fingers" (Tr. 318 (emphasis added)) is not necessarily incompatible with a limitation to "frequent" handling (Tr. 18).  As the latter term refers to how often one completes a task[4] and the former refers to the manner in which one completes a task.

Thus, the ALJ's failure to state the weight afforded to and adequately discuss Dr. Lee's opinion is harmless error.

      **B.**      **The ALJ's RFC Determination Is Based Upon Substantial Evidence and Free From Harmful Legal Error**

Plaintiff argues that the ALJ's "errors in the evaluation of the medical opinion evidence . . . thereby [leads to the ALJ's] failing to base the findings regarding [Plaintiff's] RFC in substantial evidence."  (ECF No. 13 at 13.)  Because the ALJ's assessment of the complained of medical opinions is free from harmful legal error as discussed previously, *supra* III.A, the Court finds that the ALJ's RFC determination is based upon substantial evidence.

      **C.**      **The ALJ's Credibility Determination with Respect to Plaintiff is Based Upon Substantial Evidence**

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."  *Kepler v.*

---

[4] The Court notes that the ALJ limited Plaintiff "to simple, routine and repetitive tasks with a maximum SVP 2. . . ." (Tr. 18.)  Plaintiff makes no argument that this limitation to "repetitive tasks" is incompatible with the medical opinions.  Therefore, Plaintiff waives such an argument.  *See Wall*, 561 F.3d at 1066-67.  Further, the Court notes that this limitation to "repetitive tasks" appears related to Plaintiff's mental impairments.  (*See* Tr. 18, 23-24.)

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted). The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints not credible. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Inconsistencies are a reasonable basis upon which to find a claimant not credible. *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

The factors that should be considered, in addition to the objective medical evidence, when assessing a claimant's credibility include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medications, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

First, Plaintiff argues that the ALJ's citation to Plaintiff's past work at substantial gainful activity ("SGA") levels despite her symptoms does not constitute substantial evidence to support a non-credibility finding. (ECF No. 13 at 14.) To the contrary, this is a proper basis upon which

15

to consider Plaintiff's credibility as it constitutes an "other factor" concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

Second, Plaintiff argues that the ALJ's citation to Plaintiff's participation in vocational rehabilitation services does not constitute substantial evidence to support a non-credibility finding. (ECF No. 13 at 14-15.) The District of Colorado has previously found that a claimant's "persistent attempts to work with her impairments serve to bolster her credibility." *Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000). Plaintiff's participation in such a vocational rehabilitation program, thus, may be akin to such a persistent attempt to work and serve to bolster her credibility; however, this error does not overwhelm the evidence upon which the ALJ relied in finding Plaintiff not credible (*see* Tr. 20-21 (identifying credibility determination based upon Plaintiff's daily activities; working with the complained of symptoms; and the lack of medical evidence substantiating the severity of Plaintiff's impairments)). *See Shockley v. Colvin*, 564 F. App'x 935, 943 (10th Cir. 2014) (unpublished) (holding that error in one aspect of a credibility determination did not undermine the overall credibility finding as being supported by substantial evidence).

Third, Plaintiff argues that the ALJ's citation to the lack of medical evidence substantiating the severity of Plaintiff's impairments does not constitute substantial evidence to support a non-credibility finding. (ECF No. 13 at 15-16.) The Court disagrees, 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3, and in essence, Plaintiff desires the Court to impermissibly reweigh the medical evidence.

Fourth, Plaintiff argues that the ALJ's citation to Plaintiff's daily activities does not constitute substantial evidence to support a non-credibility finding. (ECF No. 13 at 16.) The

Court disagrees. 20 C.F.R. § 404.1529(c)(3)(i); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

In sum, the ALJ's credibility determination is closely and affirmatively linked to substantial evidence in the record.

### D. The Appeals Council Properly Did Not Consider Certain Evidence Submitted to It

Social security regulation 20 C.F.R. § 404.970(b) expressly authorizes a claimant to submit new and material evidence to the Appeals Council when seeking review of the ALJ's decision." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). "If the evidence relates to the period on or before the date of the decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (quotation omitted). "If the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision." *Id.* "This decision, in turn, is reviewed for substantial evidence, based on 'the record viewed as a whole.'" *Id.* (quotation omitted). "[T]he new evidence becomes part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence. *Id.* at 859.

"Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.'" *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal quotation and citations omitted). "'Whether [evidence] qualifies as new, material and chronologically relevant is a question of law subject to [the Tenth Circuit's] de novo review.'" *Id.* (citation omitted). "If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision." *Id.*

17

(citation omitted). "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Id*. (citations omitted).[5] "Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings." *Id*. (citations omitted).

Plaintiff argues that the Appeals Council erred in failing to consider new and material evidence submitted to it (Tr. 430-40, 459-87, 489-97) concerning a "retrospective diagnosis of rheumatoid arthritis." (ECF No. 13 at 17-19.) The Court disagrees. The Court finds that the Appeals Council did not err in its refusal to consider the evidence submitted to it. The evidence submitted to it (Tr. 430-40, 459-87, 489-97) does not clearly relate to the time period on or before the ALJ's March 13, 2013 decision (Tr. 11-31). Plaintiff's citations[6] to the record (ECF No. 13 at 17 (citing Tr. 463-64, 480-81); ECF No. 17 (citing Tr. 434)) do not support a retrospective (prior to or on the date of the ALJ's decision) diagnosis of rheumatoid arthritis. As Defendant correctly argues, Plaintiff's treating physician declined to make a retrospective diagnosis of rheumatoid arthritis. (ECF No. 16 at 21 (citing Tr. 430 ("[I]t's difficult to tease out how much of her arthralgias are new vs. [c]hronic. . . ."))) Thus, the Court does not need to remand because it is not clear the evidence is related to a period on or before the ALJ's decision. *See Villalobos v. Colvin*, 544 F. App'x 793, 795-96 (10th Cir. 2013) (unpublished) (holding that in the absence of a retroactive diagnosis, the Appeals Council had no duty to remand a matter for further record development).

---

[5] The Court notes that while the Appeals Council included the submitted evidence as part of the administrative record, the Appeals Council did not consider the additional evidence; rather, the Appeals Council provided it in case Plaintiff would like to submit a new disability application. (Tr. 2.)
[6] The Court notes that an evaluation and treatment request is properly cited at Tr. 461-63. The Court further notes that Plaintiff complained of arthralgia, on July 22, 2013, is at Tr. 465.

## IV.     CONCLUSION

Based on the foregoing, the Court:

(1)     AFFIRMS Defendant's denial of disability insurance benefits.

DATED this 21st day of March, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge